IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    :        CASE NO. 09-03315

FERNANDO J. AMADOR MARTINEZ;    :
A/K/A GASOLINERA AMADOR 1, INC.   :        CHAPTER 7        FILED & ENTERED

   Debtor                                 :
                                          :                         OCT 12 2010
_____

                                                                   U.S. BANKRUPTCY COUR
                                                                   SAN JUAN, PUERTO RICO

OPINION AND ORDER

This proceeding is before the court upon an urgent motion to set hearing for sale of property filed on October 1, 2010 by Wilfredo Segarra Miranda, the Chapter 7 trustee (hereinafter referred to as the "Trustee") (Docket No. 93). The Trustee filed the urgent motion because there is a buyer (Mr. Jorge Lebrón Otero and his wife Aurea Soto Rivera) for one (1) of Debtor's real properties; and Banco Popular de Puerto Rico has approved the financing of $450,000.00 for the purchase of said property which expires on October 17, 2010 pursuant to a letter from Mr. Ezequiel Cruz of Banco Popular de Puerto Rico dated September 17, 2010 (Docket No. 92, Exhibit I). The Trustee in its urgent motion requests a hearing to resolve the following issues: (i) King Oil Corporation's (hereinafter referred to as "King Oil" or "Creditor") request to lift the automatic stay; and (ii) the summary judgment issues. Both basically revolve around one (1) core issue, namely, to determine that the Trustee as a bona fide purchaser of real property under the "strong arm powers" of 11 U.S.C. §544(a)(3) of the Bankruptcy Code may avoid an unrecorded attachment lien in conformity with the Mortgage Law of the Commonwealth of Puerto Rico.

The Trustee filed the motion for summary judgment on September 27, 2010 (Docket No. 91). On October 1, 2010, King Oil filed an opposition to the motion for summary judgment arguing that, (i) "... the prohibition to alienate, included in the Order ("Orden de Mandamiento de Embargo al Registrador") issued by the State Court, was duly registered in the Registry of Property;" (ii) and "... the attached study title indicates that the Order and Writ of Attachment ("Se acompaña Orden y Mandamiento, debidamente certificados") was pending the inscription at the Registry of Property" (Docket No. 93). For the reasons set forth below the Trustee's motion for summary judgment is

granted and King Oil's cross motion for summary judgment is denied.

Facts and Procedural Background

_____Fernando J. Amador Martinez a/k/a Gasolinera Amador 1, Inc. (hereinafter referred to as "Debtor" or "Mr. Amador") filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on April 28, 2009. The 341 meeting of creditors was held on June 9, 2009 (Docket No. 16) and closed on July 10, 2009 (Docket No. 19). Mr. Amador included King Oil in his Schedule D- Creditors Holding Secured Claims as having a disputed secured claim in the amount of $174,980.00 which was incurred in 08/2006 as a result of a judgment lien over a gas station in Quebradilla, Puerto Rico (Docket No. 5). On August 7, 2009, King Oil filed proof of claim number 5-1 in the amount of $494,745.74 alleging that the same was secured in its entirety.

On April 6, 2010 this case was converted to Chapter 7. The 341 meeting of creditors under Chapter 7 was held on June 9, 2010 and was held open for potential asset recovery (Docket No. 66).

On May 18, 2010, King Oil filed a motion to lift the automatic stay pursuant to Sections 362(d)(1) and (d)(2) alleging that its claim was secured by an attachment lien filed at the Puerto Rico Real Property Registry of Arecibo, Section II, at entry #1459 of the Book of Daily Operations #308 on April 2, 2008 (Docket No. 56). The Trustee opposed King's Oil motion for relief from the automatic stay based on the following: "[a]ccording to Debtor's schedules this property has a fair market value of $1,700,000.00. This means that notwithstanding Movant's allegation as to being a judgment creditor for $459,094.16 plus $79,622.88 for a total of $538,757.04 there is equity that the trustee should be allowed to liquidate in favor of the estate and the unsecured creditors. This is so because the attachment lien, which provides movant with a lien, is limited to the amount registered by the Registry of Property, of $264,961.00" (Docket No. 63, paragraph 5, Exhibit I).

Subsequently, on July 12, 2010, the Trustee filed a motion for sale of property free and clear of liens and notice of intended sale by which he represented that he intends to sell the real property[1]

---

[1]The real property has the following description: "RUSTICA: Predio de terreno de un área de 0.7039 cuerdas, equivalente a 2,766.7496 metros cuadrados, en el cual hay un edificio de bloques y hormigón para uso comercial. Colindando por el Norte, con la actual marginal al Sur de la Carretera Estatal #2; por el Sur, con Vicente Fernández Rehillo; por el Este, con Carmen Igartúa y

2

in controversy in the amount of $525,000.00 based on an option for sale agreement (Docket No. 75, Exhibit 2). The Trustee indicated as part of his proposed distribution of funds analysis that King Oil would receive the amount of $264,961.00 which corresponds to its attachment lien which in turn is based on a Certification issued by the Property Registrar of Arecibo, Section II, Hon. Maria V. Jimenez Maldonado, on June 21, 2010 of the above referenced real property (Docket No. 75, Exhibit I).

On July 12, 2010, the Trustee also filed an objection to King Oil's proof of claim number 5 arguing that King Oil's attachment lien[2] was only secured for the principal amount of $264,961.00 based on a title search for the above referenced real property, hence the remaining amount of $229,784.74 being unsecured (Docket No. 76). The Trustee further argues that pursuant to Section 544(a)(3) a trustee may avoid any transfer of property of the debtor or avoid any obligation incurred by the debtor that is voidable by a bonafide purchase of real property, thus King Oil's attachment lien is secured up to the registered amount of $264,961.00 which appears in the Property Registry (Docket No. 76).

On July 13, 2010, a hearing was held regarding King Oil's motion relief from the automatic stay in which the court granted King Oil thirty (30) days to file a legal memorandum and fifteen (15) days for the Trustee to reply (Docket No. 81). On August 4, 2010, King Oil filed its opposition to the Trustee's proposed sale of real property arguing that: (i) the term of thirty (30) days granted by this court to file the memorandum of law has not lapsed; and (ii) the state court order and writ of attachment to the Property Registrar is not limited to the pre-judgment attachment lien but also

---

Alfredo Acevedo; y por el Oeste, con Miguel Butler, Sucesión Damaso Soto Espinel, Julia Soto Avila y Andrés Soto Pérez." (Docket No. 63, Exhibit I).

[2]As per title seach. King Oil's attachment lien on Debtor's real property is described in the following manner: "Presentada al asiento 1459 del diario 3087, el día 2 de abril de 2008 el Documento Judicial expedido el día 25 de febrero de 2008 en Mayaguez, por el Juez José Tomás Román Barceló, caso civil #ISCI2007-04127 (306), seguido por King Oil Corporation vs. Gasolinas Amador I, Inc.; Fernando J. Amador de Andino; Joy Ling Martínez de Andino Vázquez y la Sociedad Legal compuesta entre ellos, para que se Anote Embargo por la suma de $264,961.00 de principal. Se acompaña Orden y Mandamiento, debidamente certificados." (Docket No. 76, Exhibit I).

3

includes a prohibition of sale or encumbrance (Docket No. 83). Subsequently, on August 15, 2010, King Oil filed its memorandum of law in support of its motion from relief from the automatic stay and reply to the Trustee's objection to claim number five presenting the following arguments: (i) "...the property affected by the prohibition to alienate secures the total amount of the Judgment entered, including the post-judgment interest that accrues at the per diem rate of $135.94" and the prohibition to alienate included in the Order and Writ of Attachment to the Property Registrar impedes the sale of such real property; (ii) "...King Oil must receive payment of the totality of its Judgment as part of the proceeds of any sale of the property or be allowed to have the stay lifted in its favor in order to proceed with the public sale of the property to make its judgment credit effective;" and (iii) "...Section 544(a) of the Bankruptcy Code (11 U.S.C. §544) is not applicable to the instant case and does not empower the Trustee to sell the above mentioned property, without taking into account the full amount of King Oil's Judgment. The mentioned section of law is intended to 'avoid any transfer of property of the Debtor or any obligation incurred by the Debtor...' when the security in question is not perfected. King Oil's security was perfected on April 2, 2008, more than a year prior to the filing [o]f Debtor's bankruptcy case." (Docket No. 85). On August 27, 2010 the Trustee filed his reply to King Oil's memorandum of law regarding its motion for relief from the automatic stay and claim number five and its opposition to the proposed sale of property free and clear of lien adducing the following legal arguments: (i) King Oil's lien is limited to the secured amount in the cautionary notice of attachment recorded at the Property Registry pursuant to Articles 53, 123, 105 and 112 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §§ 2256, 2412, 2355 and 2401 and Registry of Property Regulations Nos. 122.1-7 and 122.2-3, given that King Oil failed to record the final state court judgment which was for a greater amount than the previously recorded attachment lien, thus King Oil is only secured up to the amount of the pre-petition attachment lien ($264,961.00) recorded at the Property Registry; and (ii) the Trustee pursuant to Section 544(a)(3) and as a hypothetical bonafide purchaser of real property can void the unrecorded attachment lien in the amount of $229,784.74 which was not presented by Creditor for registration and thus, not recorded by the Property Registrar and included as part of the state court judgment which was rendered at a later date than the Order and Writ of Attachment (Docket No. 88).

4

Lastly, the Trustee filed a motion for summary judgment on September 27, 2010 which presents the same legal arguments included in his reply to King Oil's memorandum of law regarding the motion for relief of stay and claim number 5 and apposition to the proposed sale of property free and clear of lien and which are included herein (Docket No. 91). On September 30, 2010, Creditor filed an opposition to the motion for summary judgment (Docket No. 93).

In a nutshell, the legal controversy in the instant case is whether the Trustee as a hypothetical lien creditor and bonafide purchaser of real property pursuant to Sections 544(a)(1) and (3) may void King Oil's unrecorded attachment in the amount of $229,784.74 which was not presented by Creditor for registration and thus, not recorded by the Property Registrar and included as part of the state court judgment which was rendered at a later date than the Order and Writ of Attachment.

*Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright, Miller & Kane, Federal Practice and Procedure 3d§ 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case

5

and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir.

6

1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

Uncontested Material Facts

1. On August 29, 2006, Debtor signed a promissory note in the amount of $174,980.45 in favor of King Oil as a guarantee for overdue invoices of petroleum products and fuel supplied by Creditor.

2. On September 11, 2007, King Oil filed a civil claim for execution of promissory note and collection of monies against Debtor in the Court of First Instance of the Commonwealth of Puerto Rico, Mayaguez part, (the "state court") case number ISCI2007-01427.

3. On February 25, 2008, as per King Oil's request and bond for $264,961.00, the state court entered a Writ of Attachment lien to the Registrar ("Mandamiento de Embargo al Registrador") in the amount of $264,961.00 on Debtor's real property number 10,157 registered at the Property Registry of Arecibo, Section II.

4. On April 2, 2008, the Order and Writ of Attachment lien to the Registrar were presented for inscription to the Property Registrar of Arecibo, Section II.

5. On August 8, 2008, the state court entered judgment against Debtor in the amount of $459,094.16 plus 9.25% as post judgment legal interest, $5,000.00 in attorney's fees and $51.53 for legal expenses. King Oil did not present the state court judgment to the Property Registrar for the recordation of the same.

6. On April 28, 2009, Debtor filed a voluntary petition for bankruptcy under Chapter 13.

7. On April 6, 2010, the case was converted to Chapter 7.

Applicable Law and Analysis

*Avoidance Action under 11 U.S.C. §544(a)(1) & 544(a)(3)*

Sections 544(a)(1) and 544(a)(3) of the Bankruptcy Code provides in relevant part that:

"[t]he trustee shall have, as of the commencement of the case, and without regard to any

7

knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by– (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer]." 11 U.S.C. §§544(a)(1) & 544(a)(3).

The rights of a trustee under 11 U.S.C. §544 are determined by state law. Abboud v. The Ground Round, Inc., 482 F. 3d 15, 20 (1st Cir. 2007) (holding Pennsylvania law determined the rights of a hypothetical lien creditor under 11 U.S.C. §544(a)(1)); See In re Santos & Nieves, Inc., 814 F. 2d 57, 61 (1st Cir. 1987) citing Carina Mercury, Inc. v. Agaravides, 344 F. 2d 397 (1st Cir. 1965). Moreover, the extent of the trustee's rights as a judicial lien creditor or a bona fide purchaser of real property is dictated by the state law of the jurisdiction governing the property in question. Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶544.03[1] (15th ed. 2009). The purpose of the trustee's avoiding powers is simply "to foster the equal distribution of a debtor's assets among its general non-priority creditors." Segarra v. Osario (In re Rubero), 2006 Bankr. Lexis 3912 (Bankr. D.P.R. 2006). Subsection 544(a)(3) grants the trustee the rights and powers of a bona fide purchaser of real property under state law was enacted as recording laws in a number of states "render unrecorded transfers vulnerable only to subsequent bona fide purchasers without notice of the unrecorded interest." 4 William L. Norton, Norton Bankruptcy Law and Pratice 3d, §63:6 (Updated July 2010). "Taken together with the other portions of Code §544, the bona fide purchaser status tends toward an express policy that, where recording acts exist and no grace period is applicable, transfers not recorded or perfected prior to the petition are avoidable in bankruptcy." Id. Section 544(a)(3) vests the trustee with the powers of a bona fide purchaser of real property for value and permits the trustee to invalidate unperfected security interests. See Riley v. Sullivan (In re Sullivan), 387 B.R. 353, 357-358 (B.A.P. 1st Cir. 2008). "The trustee stands as a hypothetical bona fide purchaser without regard to any personal knowledge that the trustee may have of competing interests in the Debtor's property." In re Motta, 423 B.R. 393 (Bankr. D. Mass. 2010). Moreover, the trustee, as a bona fide purchase under Section 544(a)(3), "... is deemed to have conducted a title search, paid

8

value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶544.05 (16th ed. 2010).

*Puerto Rico Mortgage Law and the Bona Fide Purchaser*

The relevant articles from the Puerto Rico Mortgage Law necessary to determine the Trustee's rights pursuant to Section 544(a)(3) are the following:

Article 112 of the Puerto Rico Mortgage Law in pertinent part provides:

"[t]he following may request that cautionary notices on their respective rights be entered in the Registry:
1st. A person who, in a lawsuit, claims ownership to real property or the constitution, declaration, modification or extinction of any recordable right or one who files his claim in an action that affects a title to real property, or on the validity and force, or the lack of validity or force, of the title or titles involved in the acquisition, constitution, declaration, modification or extinction of the above-cited recordable rights.

2nd. A person who lawfully obtains an attachment order in his favor on real property belonging to the debtor." 30 Laws of Puerto Rico Annotated, §2401.

Article 123 of the Puerto Rico Mortgage Law provides:

"[a] cautionary notice may be converted into an appropriate registration or entry when the person in whose favor it is established acquires the right noted or proceeds to confirm the respective entry lawfully, if indicated. This change shall be made as provided by Regularions." 30 Laws of Puerto Rico Annotated, §2412.

Article 124 of the Puerto Rico Mortgage Law provides:

"[w]hen a cautionary notice of a right is converted into a final registration thereof, it shall be effective on the date of presentation of the document that motivated the notation." 30 Laws of Puerto Rico Annotated, §2413.

Article 53 of the Puerto Rico Mortgage Law provides:

"[r]egistered titles shall become effective for third parties from the date of their registration. For all intents and purposes, the registration date, including the determination of the term needed for cancellation of entries, must appear in the registration itself. In order to determine preference between two or more registrations of the same property, attention shall be given to the date, hour and presentation number of the respective titles in the Registry." 30 Laws of Puerto Rico Annotated, §2256.

Article 105 of the Puerto Rico Mortgage Law provides:

"[d]espite the fact that registration does not validate transactions or contracts that are null according to the law, nor does it alter the legal relationship of those intervening as parties in said transactions or contracts, a third person who, in good faith and by paying a price, validly acquires a right from a person who according to the Registry, appears with the power to convey it, shall be sustained in his acquisition after he has recorded his right, when for any reason the Registry is found to be inaccurate, either because the grantor's title is rescinded,

cancelled or annulled for reasons not clearly shown in the Registry itself, or because there are actions or titles of ownership or of other real rights that are not duly recorded.

With regard to this, the Registry shall be understood to be all standing entries relating to a property or right, that have not been extinguished as provided in §2451 of this title, which refer to the liens or rights that do not convey or encumber, in addition to the entry that gives notice to the right of the conveyor.

The good faith of a third party shall always be presumed unless there is proof that the inaccuracy of the Registry was known when the property was acquired.

A gratuitous acquirer shall only enjoy the Registry protection corresponding to the predecessors in title or to the conveyors.

In no case shall rights merely mentioned or the undue recording of obligations, affect a third party." 30 Laws of Puerto Rico Annotated, § 2355.

In the case at hand, the Trustee pursuant to Section 544(a)(3) has the protection of the third party bona fide purchaser referenced in Article 105 of the Puerto Rico Mortgage Law, 30 Laws of Puerto Rico Annotated, §2355. See Miranda v. Vega (In re Ramirez), 2010 Bankr. LEXIS 1793(Bankr. D. P.R. 2010); Segarra v. Garrido Pagan (In re Garrido Jimenez), 370 B.R. 878, 881 (B.A.P. 1st Cir. 2007) citing In re Santos & Nieves, Inc., 814 F. 2d 57, 61 (1st Cir. 1987). The third party bona fide purchaser referenced in Article 105 of the Puerto Rico Mortgage Law "incorporates the Spanish Law principle of the 'fe publica registral' or registry's public faith, pursuant to which the rights of the third parties acquired through a valid legal transaction relying in the content of the Registry of Property, are protected." See In re Ramirez, 2010 Bankr. LEXIS 1793(Bankr. D. P.R. 2010) citing Banco Santander v. Rosario Cirino, 126 D.P.R. 591, 601, 1190 Juris P.R. 105 (1990). Those who claim the protection of the "fe publica registral," and thus want to be considered a "tercero registral" must comply with several requirements, such as being a third party bona fide purchaser of a registered right over real property. See In re Ramirez, 2010 Bankr. LEXIS 1793(Bankr. D. P.R. 2010) citing Banco Santander v. Rosario Cirino, 126 D.P.R. at 603-604.

The Trustee as a bona fide purchaser in the instant case conducted a title search of the above referenced real property (Docket No. 63, Exhibit I) and from the same there is a registered attachment lien which is pending registration but which was presented to the Property Registrar on April 2, 2008. The attachment lien is in the amount of $264,961.00 resulting from civil case #ISCI2007-01427 (36), King Oil Corp. vs. Gasolinas Amador I, Inc.; Fernando J. Amador de Andino; Joy Ling Martínez de

10

Andino Vazquez and the conjugal partnership between them (Refer to footnote two (2) herein). The notice does not include a prohibition to alienate. Thus, the Trustee as a third party bona fide purchaser is only bound by the content of the Property Registry, meaning that he only has knowledge and notice of the attachment lien in the amount of $264,961.00.

Moreover, commentator Luis Mojica Sandoz establishes that in the case of cautionary notices of attachment if the same are not recorded, the knowledge that a third party has regarding the existence of state court proceedings does not affect his good faith. However, if the attachment is registered, and a subsequent judgment provides for a greater amount than that which is secured by the attachment, the real property will only respond for the amount which has been consigned in conformity with the amount that has been recorded.[3] See Mojica Sandoz, *Apuntes sobre el origen, efecto y extinción de las anotaciones de demanda y embargo*, 52 Rev. Jur. UPR 451, 461 (1983). In the instant case, King Oil failed to present the state court judgment which was granted subsequent to the Order and Writ of Attachment to the Registrar and which was for a greater amount. The title study conducted by the Trustee so evinces.

## Conclusion

For the reasons herein, this court finds that the Trustee as a bonafide purchaser of real property pursuant to Sections 544(a)(3) is only bound by the recorded attachment lien in the amount of $264,961.00 since King Oil failed to present to the Property Registrar for registration the judgment entered by the state court on August 8, 2008. King Oil has an unsecured claim in the amount of $229,784.74. This court authorizes the sale of the above referenced real property for the purchase price of $525,000.00.

---

[3] "En el caso del embargo, por otro lado, estamos ante un verdadero gravamen, una hipoteca judicial, tiene un efecto positivo que parte de sí mismo. Por un lado, si no se traba el embargo, el conocimiento que tenga el tercer adquiriente de la existencia del pleito no afecta su buena fe; por otro lado, trabado el embargo, si concede una cantidad mayor al reclamante que la garantizaba por el embargo, la finca responderá sólo por la cantidad consignada en la anotación; es decir que el pleito en nada afecta la finca, el embargo sí." Mojica Sandoz, *Apuntes sobre el origen, efecto y extinción de las anotaciones de demanda y embargo*, 52 Rev. Jur. UPR 451, 461 (1983).

11

In view of the foregoing, the Trustee's motion for summary judgment is hereby GRANTED and King Oil's cross motion for summary judgment is hereby DENIED.

Judgment shall be entered accordingly.

In San Juan, Puerto Rico, this 12th day of October 2010.

Enrique S. Lamoutte
United States Bankruptcy Court

12